## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ERIC L. MCRAE )
)
*Plaintiff,* )
)
vs. )     Case No. 17-cv-01260
)
TAUTACHROME, INC., )
)
_____*Defendant.*_____ )

## THIRD AMENDED COMPLAINT

Plaintiff states:

1.     Eric L. McRae (McRae) is a citizen of Sedgwick County, Kansas.

2.     Tautachrome, Inc. (Tautachrome) is a corporation incorporated in the State of Delaware with its principal place of business in the State of Arizona. It may be served with process upon its resident agent, Valis Group, Inc., at 501 Silverside Road, Suite 105, Wilmington, Delaware 19809.

3.     Federal diversity jurisdiction exists because McRae and Tautachrome are residents of different states and the amount in controversy exceeds $75,000.00.

4.     The Court has jurisdiction over Tautachrome because it entered into an express or implied contract with a resident of Kansas, to be performed in whole or in part in Kansas.

5.     Venue in this district is proper because a substantial part of the events or omissions on which the claim is based occurred in the District of Kansas.

### Facts Common to All Claims

6.     McRae is an entrepreneur and investor based in Wichita, Kansas.

7.     Tautachrome is a publicly traded company in the business of digital image verification software. It holds a patent to its software and markets it to companies who can benefit from having verifiable, original digital images that have not been modified or tampered.

8.     McRae has been a shareholder in Tautachrome since December 2015.

9.     On May 27, 2016, McRae entered into a Convertible Promissory Note (the Note) and Convertible Promissory Note Subscription Agreement (Subscription Agreement).

10.     The Note and Subscription Agreement stated that McRae would lend Tautachrome $50,000.00 for 18 months, until November 27, 2017. Until that date, the interest rate would be 5 percent. After that date, the interest rate would be 10 percent.

11.     After one year, on May 27, 2017, McRae could convert the principal balance and all accrued but unpaid interest to common stock of Tautachrome.

12.     According to the Note and Subscription Agreement, the conversion formula for McRae's conversion option was as follows:

<u>Principal and Outstanding Interest</u>
(Conversion Rate * Conversion Price)

13.     According to the Note and Subscription Agreement, the Conversion Rate was 50 percent, and the Conversion Price was $0.01894.

14.     On November 28, 2016, McRae entered into an oral agreement with Tautachrome to serve as its Business Operations Manager.

15.     That same day, Tautachrome issued a press release entitled, "Tautachrome Inc. appoints Eric McRae Business Operations Manager and amps up search for global partner".

16.     For several months before McRae entered into this agreement, he provided informal consulting and other input to Tautachrome's executives, both from Wichita and in Arizona.

17.     As Business Operations Manager, McRae was responsible for the financial controls of Tautachrome. He participated in the strategic planning for Tautachrome while overseeing its day-to-day operations. McRae performed most of these functions from his office in Wichita, but also traveled to Arizona occasionally.

18.     On January 13, 2017, the Board of Directors of Tautachrome executed a Resolution by Unanimous Consent, a copy of which is attached as Exhibit A.

19.     On or after January 13, 2017, Tautachrome provided McRae with an unsigned version of the Engagement Agreement referenced in the Resolution.

20.     On February 2, 2017, McRae executed and delivered to Tautachrome the Engagement Agreement, which had an effective date of November 28, 2016, the same date Tautachrome had issued its press release.

21.     The Engagement Agreement stated McRae would receive 35 million shares of Tautachrome common stock, payable February 2, 2017. The value of those shares as of February 2, 2017 was approximately $1.05 million.

22.     McRae continued providing services to Tautachrome pursuant to the Engagement Agreement, mostly from Wichita, Kansas, but also in Arizona. He provided significant value to Tautachrome's business prospects and share value.

23.     To compensate McRae for his unexpected, additional, significant contributions to Tautachrome, on June 10, 2017, Dr. Jon Leonard, Tautachrome's CEO, and McRae began negotiating revisions to the Engagement Agreement to provide McRae additional shares of Tautachrome common stock. McRae viewed this in the vein of a compensation bonus based on performance. Dr. Leonard's starting point for discussion was 185 million shares.

24.     On June 10, 2017, during a telephone call, Leonard made the following statement to McRae: "By the way, as far as I'm concerned, you can keep that 35 million it has nothing to do with what we are talking about now."

25.     In stating "that 35 million", Leonard was referring to the 35 million shares of Tautachrome stock in the Engagement Agreement Tautachrome had provided McRae.

26.     At the time Leonard made this statement to McRae, Leonard had express or implied authority to make that statement on behalf of Tautachrome.

27.     As of June 10, 2017, 185 million shares of Tautachrome stock was worth approximately $1.85 million.

28.     McRae assented to Tautchrome's proposal to increase his compensation to at least an additional 185 million shares.

29.     On June 16, 2017, Tautachrome terminated McRae "effective immediately" and without prior notice.

30.     The Engagement Agreement stated McRae could be terminated only upon 10 days' written notice.

31.     Tautachrome has failed and refused to deliver to McRae any of the shares contemplated in the Engagement Agreement or in their subsequent agreement.

32.     Neither Leonard nor any other authorized person authorized by Tautachrome has executed the Engagement Agreement with McRae.

33.     Tautachrome's failure or refusal to execute the Engagement Agreement is not the result of accident, mistake or inadvertence.

34.     Upon information and belief, Tautachrome purposely refused to execute the Engagement Agreement on the belief that doing so would make the Engagement Agreement

unenforceable, allowing Tautachrome to retain the benefit of McRae's services without providing him any compensation.

35.     Neither Leonard nor anyone with Tautachrome notified McRae before October 2017 that it had failed or refused to execute the Engagement Agreement.

36.     Tautachrome has failed and refused to repay McRae the principal and accrued interest of his capital investments within 18 months of the Note.

37.     Pursuant to Paragraph 8(a) of the Note, on November 28, 2017 McRae provided Tautachrome written notice of default. Tautachrome has failed and refused to cure that default.

38.     McRae has fulfilled all conditions precedent to asserting the causes of action alleged herein.

## COUNT 1: BREACH OF ENGAGEMENT AGREEMENT

39.     McRae incorporates by reference the previous paragraphs of this Complaint.

40.     McRae and Tautachrome entered into a written Engagement Agreement for McRae to serve as Tautachrome's Business Operations Manager.

41.     The Engagement Agreement is governed by the laws of the State of Arizona.

42.     In the Engagement Agreement, Tautachrome promised to pay McRae 35 million shares of Tautachrome common stock on February 2, 2017. The value of shares as of February 2, 2017 was $1,050,000.00.

43.     McRae provided labor and services to Tautachrome in exchange for the promised compensation, mostly from Wichita, Kansas, but also in Arizona.

44.     McRae provided services and obtained outcomes significantly above what the parties had contemplated, and Tautachrome offered McRae at least an additional 185 million shares of Tautachrome common stock to compensate him for those services and outcomes.

45.     McRae assented to Tautachrome compensating him with a minimum of 185 million shares.

46.     On June 16, 2017, Tautachrome terminated the Engagement Agreement without any prior notice.

47.     Tautachrome has failed and refused to provide McRae any shares of Tautachrome stock for his services.

48.     Tautachrome's actions constitute breach of contract.

49.     Because of Tautachrome's breach of the parties' agreement, McRae sustained damages he otherwise would not have sustained in excess of $75,000.

50.     To the extent McRae is deemed the successful party under Count 1 or through any implied contract, McRae requests reasonable attorney fees pursuant to Arizona Revised Statute Section 12-341.01.

WHEREFORE, Eric L. McRae prays for entry of judgment in his favor and against Tautachrome, Inc. for Breach of Contract; for an award of damages in excess of $75,000.00; for his reasonable attorney fees and costs of this action; and for such other and further relief as this Court deems just and equitable.

## COUNT 2: BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

51.     McRae incorporates by reference the previous paragraphs of this Complaint.

52.     Under Arizona law every contract, including the Engagement Agreement, carries with it an implied covenant of good faith and fair dealing.

53.     Under Arizona law, the purpose of the implied covenant of good faith and fair dealing is so neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.

54.     Tautachrome violated its implied covenant of good faith and fair dealing with

McRae by:

      a.     failing or refusing to execute the Engagement Agreement;

      b.     representing to McRae that he would receive the shares contemplated by

the Engagement Agreement;

      c.     failing or refusing to provide to McRae the shares contemplated by the

Engagement Agreement;

      d.     attempting to declare the Engagement Agreement unenforceable solely

because Tautachrome had failed or refused to execute it.

The purpose for these actions was to impair McRae's ability to receive any payment or other

benefit for the services he provided Tautachrome as Business Operations Manager.

55.     Tautachrome's breach of its implied covenant of good faith and fair dealing with

McRae occurred knowingly and intentionally, with spite or malice, a fraudulent or evil motive on

the part of Tautachrome, or a conscious and deliberate disregard of the interests of McRae.

56.     Because of Tautachrome's breach, McRae sustained damages he otherwise would

not have sustained in excess of $75,000.

57.     McRae specifically requests punitive damages against Tautachrome in an amount

to be determined.

58.     To the extent McRae is deemed the successful party under Count 2 or through any

implied contract, McRae requests reasonable attorney fees pursuant to Arizona Revised Statute

Section 12-341.01.

WHEREFORE, Eric L. McRae prays for entry of judgment in his favor and against

Tautachrome, Inc. for Breach of Implied Covenant of Good Faith and Fair Dealing; for an award

of damages in excess of $75,000.00; for punitive damages in an amount to be determined; for his reasonable attorney fees and costs of this action; and for such other and further relief as this Court deems just and equitable.

## COUNT 3: PROMISSORY ESTOPPEL

59.     McRae incorporates by reference the previous paragraphs of this Complaint.

60.     Tautachrome failed or refused to sign the Engagement Agreement in an attempt to retain the benefits of McRae's labor and services without paying him any compensation.

61.     The Engagement Agreement, which Tautachrome drafted, represents a promise by Tautachrome upon which McRae relied to his detriment by signing, returning to Tautachrome, and then providing several months of labor and services.

62.     Tautachrome reasonably should have foreseen that the Engagement Agreement, which it drafted, would cause McRae to so rely.

63.     To the extent the Engagement Agreement, and any amendments thereto, are unenforceable because of the absence of Tautachrome's signature on the Engagement Agreement, Tautchrome should be estopped from denying the promises it made to McRae in the Engagement Agreement.

64.     The Engagement Agreement, which Tautachrome prepared and delivered to McRae, evidences Tautachrome's promise to make a memorandum of the parties' agreement.

WHEREFORE, Eric L. McRae prays for entry of judgment in his favor and against Tautachrome, Inc. for Promissory Estoppel; for relief in excess of $75,000.00; and for such other and further relief as this Court deems just and equitable.

## COUNT 4: FRAUD

65.     McRae incorporates by reference the previous paragraphs of this Complaint.

66.     Tautachrome, through its CEO, Jon Leonard, made false or untrue representations to McRae as statements of existing and material fact on June 10, 2017, during a telephone call. Leonard made the following statement to McRae: "By the way, as far as I'm concerned, you can keep that 35 million it has nothing to do with what we are talking about now."

67.     Leonard's statement was that McRae could keep the 35 million shares of Tautachrome stock provided under the Engagement Agreement, because it had nothing to do with the additional shares of compensation Tautachrome was offering McRae.

68.     Leonard's representations were known by him to be false or untrue, or were recklessly made by him without knowledge concerning them.

69.     Leonard's representations were intentionally made for the purpose of inducing McRae to act upon them.

70.     McRae reasonably relied and acted upon the representations made.

71.     By relying upon the representations, McRae sustained damages he otherwise would not have sustained in excess of $75,000.

72.     McRae specifically requests punitive damages against Tautachrome in an amount to be determined.

WHEREFORE, Eric L. McRae prays for entry of judgment in his favor and against Tautachrome, Inc. for Fraud; for relief in excess of $75,000.00; for punitive damages in an amount to be determined; and for such other and further relief as this Court deems just and equitable.

## COUNT 5: FRAUD – PROMISE OF FUTURE EVENTS

73.     McRae incorporates by reference the previous paragraphs of this Complaint.

74.     Tautachrome had no intention of performing the promises contained in the Engagement Agreement at the time it gave that document to McRae.

75.     Tautachrome did not perform its promise as it represented that it would.

76.     Tautachrome made the promises contained in the Engagement Agreement with the intent to deceive and for the purpose of inducing McRae to act upon those promises.

77.     McRae reasonably relied and acted upon those promises.

78.     McRae sustained damages relying upon the promises of Tautachrome.

79.     Because of Tautachrome's breach, McRae sustained damages he otherwise would not have sustained in excess of $75,000.

80.     McRae specifically requests punitive damages against Tautachrome in an amount to be determined.

WHEREFORE, Eric L. McRae prays for entry of judgment in his favor and against Tautachrome, Inc. for Fraud—Promise of Future Events; for relief in excess of $75,000.00; and for such other and further relief as this Court deems just and equitable.

## COUNT 6: FRAUD THROUGH SILENCE

81.     McRae incorporates by reference the previous paragraphs of this Complaint.

82.     From the time that McRae signed the Engagement Agreement and returned it to Tautachrome, to the time that Tautachrome attempted to terminate McRae's Engagement Agreement, Tautachrome had knowledge of a material fact: that it had not executed the Engagement Agreement.

83.     This fact was material because whether McRae had an enforceable Engagement Agreement with Tautachrome is one which a reasonable person would attach importance in determining his/her course of action in this transaction.

84.     McRae did not have this fact and was not able to discover this fact through the exercise of reasonable diligence.

85.     Under the facts and circumstances, Tautachrome was under an obligation to communicate this material fact to McRae.

86.     Tautachrome intentionally failed to communicate this material fact to McRae.

87.     McRae justifiably relied upon Tautachrome to communicate to him that it had not signed the Engagement Agreement and was attempting to retain the benefit of his services for no compensation to McRae.

88.     Because of Tautachrome's failure to communicate this material fact, McRae has sustained damages in excess of $75,000.00.

89.     McRae specifically requests punitive damages against Tautachrome, in an amount to be determined.

WHEREFORE, Eric L. McRae prays for entry of judgment in his favor and against Tautachrome, Inc. for Fraud through Silence; for relief in excess of $75,000.00; for punitive damages to be determined; and for such other and further relief as this Court deems just and equitable.

## COUNT 7: BREACH OF CONVERTIBLE PROMISSORY NOTE

90.     McRae incorporates by reference the previous paragraphs of this Complaint.

91.     Tautachrome has breached the Convertible Promissory Note by failing and refusing to repay McRae all principal and accrued interest within 18 months of the Note and has failed to cure that breach upon written notice from McRae.

92.     Because of Tautachrome's breach of the Convertible Promissory Note, McRae has sustained damages in excess of $75,000.00.

WHEREFORE, Eric L. McRae prays for entry of judgment in his favor and against Tautachrome, Inc. for fraud by silence; for relief in excess of $75,000.00; and for such other and further relief as this Court deems just and equitable.

s/ Edward L. Robinson
Edward L. Robinson, #22043
Robinson Law Firm, LLC
200 N. Broadway, 5th Floor
Wichita, KS 67202
(316) 260-9771 Tel
(316) 462-9530 Fax
erobinson@robinsonlawks.com
*Attorneys for Plaintiff*

## JURY TRIAL DEMAND

Eric L. McRae demands a trial by jury for all claims so triable herein. It is requested trial be held in Wichita, Kansas.