# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ERIC L. MCRAE,

    *Plaintiff,*

vs.

    Case No. 17-1260-EFM-GEB

TAUTACHROME, INC.,

    *Defendant.*

## MEMORANDUM AND ORDER

This action arises out of a failed business relationship between Plaintiff Eric L. McRae and Defendant Tautachrome, Inc. McRae asserts seven claims against Tautachrome. Count 1 asserts a claim for breach of contract for 35 million shares of company stock McCrae believes he is entitled to under the Engagement Agreement executed by the parties. McRae now moves for partial summary judgment on this claim. For the reasons discussed below, the Court denies McRae's Motion for Partial Summary Judgment (Doc. 55).

### I.    Factual and Procedural Background[1]

Tautachrome is a Delaware corporation with its principal place of business in the state of Arizona. It is a publicly traded company in the business of digital image verification software.

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

Tautachrome holds patents to its software, and it markets that software to companies who can benefit from having verifiable, original digital images that have not been modified or tampered.

McRae is an investor and a resident of Kansas. He became a shareholder in Tautachrome in December 2015. Initially, McRae provided informal consulting to Tautachrome's executives, but in November 2016, Tautachrome appointed him "Business Operations Manager." Tautachrome issued a press release on November 28, 2016, announcing this appointment and describing McRae's position as follows: "In addition to managing the day to day business activities of the Company, Mr. McRae will be responsible for the financial controls of the Company and will participate in Company strategic planning."

On January 13, 2017, Tautachrome's Board of Directors executed a Resolution by Unanimous Consent (the "Resolution"). That Resolution states in part:

> Now therefore it is resolved:
>
> That the agreements with Eric L McRae, Luke Stewart Willie Tucker, and Billy D. Beam are hereby ratified and affirmed in all particulars, that the Company's CEO, Jon N. Leonard, is hereby empowered and directed to undertake all actions required under these agreements, and all such actions undertaken are hereby affirmed and ratified in advance, and that any other resolutions required by the Board in order to implement these actions are hereby deemed so resolved.

That same day or sometime after, Tautachrome provided McRae an unsigned version of the agreement referenced in the Resolution. Titled "Eric McRae Engagement Agreement" and dated November 28, 2016, the Engagement Agreement provides that McRae "shall participate in Company strategic planning, and shall oversee day-to-day operations." It also contains a "Compensation" provision, stating that McRae will be granted 35 million shares of Tautachrome common stock "upon execution of this Engagement Agreement."

McRae alleges, and Tautachrome disputes, that he delivered a signed copy of the Engagement Agreement to Tautachrome on February 2, 2017. As of that date, there were 4 billion authorized shares and 1,677,590,057 shares of Tautachrome common stock. McRae continued providing services under the Engagement Agreement after February 2, primarily from Wichita, Kansas.

From the end of February until June 10, McRae exchanged several emails with Tautachrome's Chief Executive Officer, Jon Leonard, concerning his "employment contract" and compensation. During that time period, Leonard never asked McRae about the status of the Engagement Agreement or indicated that he did not have a signed copy of the Engagement Agreement. On the morning of February 27, 2017, McRae sent an email to Leonard stating: "By Wednesday, I will get you my latest travel expenses, employment contract, and make sure my shares are up to date. I have been too busy to do it but I will get it done this week. My affairs should be in order as our future is uncertain." Less than an hour later, McRae sent another email to Leonard stating, in part: "Beginning Wednesday, March 1, 2017, I will be taking an indefinite leave of absence. I will take this time to evaluate my future with the company. In the interim, If [sic] you wish to terminate my employment, then act. My employment contract has not yet been signed, so fire me today if you wish."

On May 26, McRae sent Leonard a lengthy email discussing his and his brother Charles' compensation. At the beginning of that email, McRae states: "In December of 2016 when we came out on business, I had asked you about giving us shares. You did that. I never did execute the paperwork." Later in the email, McRae proposes that Tautachrome issue him, Charles, and a third employee, "Spartan Dawg," a total of 1.4 billion shares to compensate them for "strategy" and other services. Leonard did not accept McRae's 1.4 billion share offer.

On June 1, McRae emailed Leonard asking for an update "on compensating Charles, myself, and Spartan Dawg with shares." He later states, "I understand that a contract must be executed and one that is favorable to both parties."

On June 16, Tautachrome terminated McRae "effective immediately" and without prior notice. McRae subsequently provided Tautachrome a signed copy of the Engagement Agreement. Tautachrome did not execute the Engagement Agreement or return it to McRae. In addition, McRae never received any of the shares contemplated by the agreement.

McRae filed this lawsuit on October 10, 2017. He filed a Third Amended Complaint on August 14, 2018, asserting seven claims: (1) breach of the Engagement Agreement, (2) breach of implied covenant of good faith and fair dealing, (3) promissory estoppel, (4) fraud, (5) fraud—promise of future events, (6) fraud through silence, and (7) breach of convertible promissory note. McRae now moves for partial summary judgment on Count 1, his breach of contract claim.

## II.  Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3] The movant bears the initial burden of proof.[4] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

in the event of trial from which a rational trier of fact could find for the nonmovant.[5] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[6] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[7]

### III. Analysis

A federal court sitting in diversity must apply the choice of law rules of the state in which it sits.[8] "[W]here a contract contains a choice-of-law clause, the court will apply the forum state's choice-of-law rules."[9] "Under Kansas law, parties to a contract may select the law that will govern interpretation of their agreement, and Kansas courts will generally honor that choice."[10] The Engagement Agreement in this case contains a choice of law provision stating that it will be governed by Arizona law. Accordingly, the Court will apply Arizona law to resolve the parties' substantive issues.

To prevail on a claim for breach of contract, the plaintiff must prove (1) the existence of the contract; (2) breach of the contract, and (3) resulting damages.[11] McRae contends that he is

---

[5] *Id.* (citing Fed. R. Civ. P. 56(e)).

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[8] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

[9] *Evans v. Orion Ethanol, Inc.*, 2011 WL 2516929, *1 (D. Kan. June 23, 2011) (citing *MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1260 (10th Cir.2006)).

[10] *Id.* (citing *Pepsi–Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir.2005)).

[11] *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975) (citation omitted).

entitled to summary judgment on his breach of contract claim because there is no genuine issue of material fact that (1) Tautachrome made the offer in the Engagement Agreement; (2) McRae accepted the offer; (3) McRae was entitled to 35 million shares of Tautachrome stock under the Engagement Agreement that he has not received; and (4) Tautachrome improperly terminated the Agreement.

In response, Tautachrome argues that the Engagement Agreement is not enforceable because it never signed the agreement. Under the statute of frauds, contracts that cannot be performed in one year must be in writing and signed by the party to be charged.[12] The Engagement Agreement states that the term of McRae's engagement with Tautachrome is 5 years. Thus, the Engagement Agreement must satisfy the statute of frauds to be enforceable.

McRae does not dispute that Tautachrome never signed the Engagement Agreement. He contends, however, that the statute of frauds is still satisfied because Tautachrome's board executed the Resolution affirming and approving the Engagement Agreement and authorizing Leonard to take all actions directed by the Engagement Agreement. In support of his argument, McRae relies on *Arizona Board of Regents v. Main Street Mesa Associates*.[13] In that case, the Arizona Board of Regents posted a notice to sell real property and solicited bids.[14] A bidder presented a bid to the Board of Regents but on terms and conditions that differed from the notice.[15] The Board of Regents subsequently passed a resolution authorizing the University of Arizona to

---

[12] ARIZ. REV. STAT. ANN. § 44-101(5).

[13] 891 P.2d 889 (Ariz. Ct. App. 1994).

[14] *Id*. at 891.

[15] *Id*. at 891-92.

execute an escrow agreement with the bidder in accordance with the advertised terms and conditions, but the Board of Regents later backed out of the agreement.[16] The bidder filed suit for specific performance and lost.[17]

On appeal, the Arizona Court of Appeals affirmed the decision of the trial court because the bidder's offer differed from the terms of the notice.[18] The court, however, also took up the issue of the resolution, concluding that it did not satisfy the statute of frauds.[19] According to the court:

> Even if the resolution was for the sale of land, the statute of frauds requires that the document be signed by the party sought to be charged. [The bidder] has presented no argument that the resolution was signed by a party authorized to accept the bid and bind [the Board of Regents]. Moreover, the resolution is not an agreement to sell the Farm, nor has [the bidder] alleged that [the Board of Regents] ever promised to make such an agreement. The resolution merely indicated that [the Board of Regents] would act on [the bidder's] bid at the October meeting. That the bid was accepted at the September meeting to consider its adoption in the future does not mean that a contract was formed.[20]

McRae acknowledges that the facts of *Arizona Board of Regents* are not identical to this case, but he argues that the decision provides "meaningful guidance" as to how Arizona courts treat corporate resolutions. According to McRae, the decision stands for the proposition that "a resolution can be sufficient proof of acceptance such that the agreement is in writing and not subject to the [s]tatute of [f]rauds" as long as (1) the resolution is signed by the party to be charged, (2) the resolution is signed by the party who authorized the agreement, and (3) the resolution

---

[16] *Id*.

[17] *Id*. at 892.

[18] *Id*. at 896.

[19] *Id*. at 896-97.

[20] *Id*. at 897.

contains a promise to make such agreement. The Court, however, disagrees. The Arizona Court of Appeals did not make such a definitive conclusion regarding corporate resolutions and the statute of frauds. It did not state what requirements a corporate resolution must contain to satisfy the statute of frauds. It only found that the resolution in that case was not sufficient because it was not signed by the party who authorized the agreement and did not contain a promise to make such agreement. Accordingly, the Court declines to apply *Arizona Board of Regents* to this case.[21] The Resolution does not satisfy the statute of frauds and bind Tautachrome to the Engagement Agreement.

Regardless of the Court's decision on the statute of frauds issue, the Court must still deny McRae's motion because there is a genuine issue of material fact regarding whether McRae accepted and signed the Engagement Agreement. McRae asserts that he sent a signed copy of the Engagement Agreement to Leonard on February 2, 2017. But Tautachrome has provided several emails authored by McRae after February 2 in which McRae states that he had not signed his "employment contract" and that he had never received the 35 million shares. Viewing these facts in the light most favorable to Tautachrome, a rational jury could conclude that the employment contract McRae was referring to in the emails was the Engagement Agreement and that he never signed that agreement before this termination. Therefore, the Court must deny McRae's Motion for Partial Summary Judgment.

---

[21] As McRae points out in his motion, other jurisdictions have held that corporate minutes or resolutions adopted by a board of directors of a corporation can satisfy the statute of frauds. *See Whitlow v. Bd. of Ed.*, 108 Kan. 604, 196 P. 772, 773 (Kan. 1921); *DFI Comms., Inc. v. Greenberg*, 363 N.E.2d 312, 315 (N.Y. 1977); *Soteriades v. Wendy's of Ft. Wayne, Inc*., 517 N.E. 2d 1011, 1014 (Ohio App. 1986). But, the Engagement Agreement is governed by Arizona law, and absent authority from an Arizona state statute or court stating that corporate minutes or resolutions may satisfy the statute of frauds, the Court declines to find that the Resolution satisfies the statute of frauds in this case.

**IT IS THEREFORE ORDERED** that McRae's Partial Motion for Summary Judgment (Doc. 55) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 21st day of May, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE