# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ERIC L. MCRAE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 17-1260-EFM-GEB |
| TAUTACHROME, INC., | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the discovery conference held November 19-21, 2019, and Plaintiff's objections presented on the record during the extended conference. Plaintiff Eric L. McRae appeared in person and through counsel, Edward L. Robinson. Defendant Tautachrome, Inc. appeared in person through its Chief Executive Officer, Dr. Jon Leonard and through counsel, Francis J. Santo and Ian D. Quinn.[1] After thorough discussion, the Court made verbal rulings regarding the discovery disputes and expects the parties to conduct themselves accordingly. This written opinion memorializes those rulings.

---

[1] Mr. Quinn was present for the entirety of the November 19 hearing, as well as the morning of the November 20 hearing. Following a medical incident at approximately 1:30 p.m. on November 20, his presence was excused by the Court.

**I.    Background[2]**

Defendant Tautachrome, Inc. is a publicly-traded company that develops image-verification software. Plaintiff Eric McRae began his connection with Tautachrome as a shareholder and later became the company's Business Operations Manager. Plaintiff claims he entered into an Engagement Agreement with Defendant, and he performed his end of the agreement, serving as the company's Business Operations Manager and adding value to the company. He claims Defendant then breached the agreement by refusing to pay him the compensation he was promised and terminating his services without required notice. He claims although the initial agreement was an oral agreement, he executed and delivered to Defendant a written Engagement Agreement, but Defendant failed to sign it. Plaintiff claims Defendant's failure to sign the Engagement was a strategic maneuver to defraud him.

Plaintiff filed this lawsuit in October 2017, and his Third Amended Complaint (ECF No. 44) contains seven claims: Count I (breach of engagement agreement); Count II (breach of implied covenant of good faith and fair dealing); Count III (promissory estoppel); Count IV (fraud); Count V (promise of future events); Count VI (fraud through silence); and Count VII (breach of convertible promissory note). In response to the claims, Defendant contends the Engagement Agreement was never executed. It

---

[2] Unless otherwise noted, the information recited in this section is taken from Plaintiff's Third Amended Complaint (ECF No. 44), Defendant's Answer (ECF No. 46), Plaintiff's Motion for Partial Summary Judgment (ECF No 55, 56), and from the briefing regarding Defendant's earlier Motion to Dismiss (ECF Nos. 12, 15, 21), as well as discussions before the Court in prior conferences. This background information should not be construed as judicial findings or factual determinations.

maintains the company grew frustrated with Plaintiff's work and relieved him of his duties, and he only produced a signed "engagement agreement" when the parties neared litigation.

After an initial stay, a scheduling order was entered in August 2018 (ECF No. 52) following a decision on Defendant's early motion to dismiss or transfer. (Mem. and Order, ECF No. 36.) Plaintiff filed a motion for partial summary judgment as to Count 1 of the Third Amended Complaint in December 2018 (ECF No. 55), which was later denied. (ECF No. 78.) The schedule proceeded as entered, generally, until March 2019, when the parties informally requested continuation of the pretrial conference. (ECF No. 70.) In April, the pretrial conference was again rescheduled after a status conference revealed significant discovery issues. (ECF No. 74.) Plaintiff discovered the laptop of Defendant's CEO, Dr. Jon Leonard, may contain discoverable information, and the parties were working through the production of discovery contained in the laptop.

Since April, discovery disputes have plagued this case. Between April 2019 and October 2019, no less than five discovery conferences were held before the undersigned.[3] The disputes can be distilled into two primary issues: 1) Plaintiff's late discovery of Dr. Leonard's laptop, which Defendant had not previously disclosed, and technological issues related to its production; and 2) as a result of the laptop production, the even later discovery of a personal Google mail (Gmail) address used by Dr. Leonard, which Plaintiff also agreed to produce.

---

[3] *See* Orders, ECF No. 74 (Apr. 7, 2019); No. 77 (May 10, 2019); No. 84 (Aug. 22, 2019); No. 87 (Sept. 23, 2019); No. 89 (Oct. 29, 2019).

3

In an effort to conclude the discovery issues and move this case toward a meaningful mediation, on October 29, 2019, the undersigned U.S. Magistrate Judge ordered counsel and all parties to appear in person, and continue to report to the U.S. Courthouse daily until production of the documents gleaned from the laptop and Gmail account were completed, and a subsequent pretrial conference and mediation could be scheduled. (Order, ECF No. 89.) This order lead to the conferences held in person on November 19-20 (ECF Nos. 90, 91) and the phone conference held November 21, 2019 (ECF Nos. 93, 94).

## II. Plaintiff's Objections to Defendant's Privilege Assertions

During the first day of conference on November 19, Plaintiff presented four overarching objections to the items contained on Defendant's privilege log, which included items produced from Dr. Leonard's laptop. A final version of the log was produced to the Court during the November 19, 2019 conference. Each objection was decided during the hearing, but the rulings on each are memorialized here.

### 1. "Competent Evidence" Objection

Plaintiff's first objection was based upon the level of detail required to be included in a privilege log under *In re Syngenta AG MIR 162 Corn Litig.*[4] and related District of Kansas authority. Plaintiff claims the entries on the log fail to provide an "evidentiary showing based on competent evidence" that the entries were created under the supervision of an attorney and/or that documents were prepared in the course of litigation

---

[4] No. 14-MD-2591-JWL, 2017 WL 1106257, at *5 (D. Kan. Mar. 24, 2017).

4

and do not contain or incorporate non-privileged underlying facts (elements No. 5 and 6 from the *Syngenta* case).[5]

During the hearing, Defendant countered that the showing on the privilege log was sufficient. However, defense counsel also offered to provide an affidavit or declaration to appease Plaintiff's concerns.

Upon review of the log itself, this Court was inclined to think the log is sufficient, because "the proper inquiry is whether Defendant made the showing necessary to support its privilege claims, not necessarily the *format* by which Defendant makes the showing."[6] However, given Defendant's offer to provide an affidavit, the Court overrules Plaintiff's objection in part by finding no waiver of privilege on this basis. Plaintiff's objection is also sustained in part, and Defendant is **ORDERED** to provide such affidavit, in compliance with elements No. 5 and 6 of Syngenta, no later than **December 6, 2019**.

2. **Objection Regarding Emails Where Plaintiff is a Participant**

A number of documents produced from Dr. Leonard's laptop were withheld on the basis of attorney-client privilege, yet the information on the privilege log reveals that Plaintiff himself either authored or was included in the original communications. Finding no Kansas or Arizona[7] authority on the subject, Plaintiff cites a District of Colorado case, *Gottlieb v. Wiles*,[8] to claim he is entitled to production of all documents included on

---

[5] *Id.*
[6] *See Pipeline Prods., Inc. v. Madison Companies, LLC*, No. 15-4890-KHV-ADM, 2019 WL 2106111, at *2 (D. Kan. May 14, 2019).
[7] *See* discussion *infra* note 22 regarding the law applicable to privilege.
[8] *Gottlieb v. Wiles*, 143 F.R.D. 241 (D. Colo. 1992).

5

Defendant's privilege log in which he was included in the email chain. Plaintiff argues because he shared a common interest with Tautachrome during his association there, neither he nor Tautachrome may now assert the attorney-client privilege against one another regarding those communications occurring during his employment.

Defendant submitted informal briefing on the morning of the hearing, November 20, 2019. In its brief on this issue, Defendant argues *Gottlieb* is not binding authority. Additionally, Defendant argues here, the documents at issue concern a separate civil action filed against the Defendant, its CEO, and his wife. Defendant contends this situation is distinguishable from *Gottlieb*. Plaintiff was never represented personally by Tautachrome's counsel in the litigation discussed in the disputed documents. Instead, he only obtained these documents by virtue of his association with Tautachrome, and when his association ended there is no argument or evidence that Tautachrome waived its attorney-client privilege for documents furnished to McRae during his association with the company. Defendant relies upon the concurring opinion in *Upjohn Co. v. United States*,[9] as well as a District of Connecticut case, *Peralta v. Cendant Corp.*,[10] to support its argument.

Upon review of the authorities, the Court finds *Gottlieb* more persuasive in the current context. In *Gottlieb*, the corporate defendant was asserting the attorney-client privilege and work product doctrine to withhold documents from Q.T. Wiles, its former

---

[9] *Upjohn Co. v. United States*, 449 U.S. 383, 403-04 (1981) (Burger, J., concurring in part).
[10] *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 40 (D. Conn. 1999).

6

Chairman of the Board/CEO, in a lawsuit between the corporation and Wiles.[11] The documents withheld by the corporation were generated at the time Wiles was acting CEO; therefore, "he was squarely within the class of persons who could receive communications and work product from [corporate] counsel without adversely impacting the privileged or confidential nature of such material."[12] The court went on to note, while there is no question Wiles cannot assert or waive the privilege on behalf of the company, the ultimate question was whether the former officer is "precluded by the attorney-client privilege or work product doctrine from inspecting documents generated during [his] tenure."[13] Finding little authority on the topic, the *Gottlieb* court cited a Delaware state court case, *Kirby v. Kirby*,[14] to find a corporation may not assert the attorney-client privilege against a former director in such a situation.

In *Peralta*, the case on which Defendant relies, a former employee sued his former employer for discrimination.[15] During the deposition of another former employee, a privilege dispute arose. Defense counsel for the corporation prepared the non-party former employee for deposition, and plaintiff's counsel asked questions about the advice given during that preparation, to which defense counsel object on the basis of privilege. The court found any privileged information obtained by the non-party former employee during her employment remained privileged, and any pre-deposition communications

---

[11] *Gottlieb*, 143 F.R.D. at 246.
[12] *Id.* at 247.
[13] *Id.*
[14] *Kirby v. Kirby,* No. 8604, 1987 WL 14862 (Del.Ch., July 29, 1987) (LEXIS, States Library, Del. file).
[15] *Peralta.*, 190 F.R.D. at 41.

7

between the non-party former employee and counsel were protected by attorney-client privilege, as long as their nature and purpose were to learn facts specifically related to the plaintiff's termination.[16] But the focus in *Peralta* was this: whether communications between corporate counsel and its former employee which occurred after the employee's termination would be protected by the attorney-client privilege. The *Peralta* case is simply distinguishable from the factual situation at hand, and the Court finds *Gottlieb* more applicable under these circumstances. And, in the concurring opinion in *Upjohn*, Chief Justice Burger encouraged the court to articulate a general rule that communication is privileged when an employee or former employee speaks at the direction of management with an attorney regarding conduct within the scope of employment.[17] But the Court did not address whether such privilege should be assessed against the very employee participating in such communications.

To assist in the Court's decision-making process, the parties submitted a sampling of documents *in camera* for the Court's review.[18] A review of that sampling reveals the communications were largely discussions between counsel, Dr. Leonard, and Plaintiff regarding a previous lawsuit. After review of the documents, while this Court has some reservations regarding the potential relevancy of the information to the current matter, it also recognizes that Plaintiff does not know, specifically, the content of the documents at

---

[16] *Peralta.*, 190 F.R.D. at 41.
[17] *Upjohn Co.*, 449 U.S. at 403.
[18] Mr. Santo submitted to the Court by email dated November 19, 2019, the following documents (by number assigned on the privilege log): 3, 4, 5, 6, 10, 11, 12, 13, 14, 16, 17, 18, 21, 23, 25, 30, 33, 34, 40, 41, 45, 46, 47, 49, 50, 51, 53, 67, 75, 76, 77, 80, 81, 82, 83, 85, 90, 92, 94, 95, 100. Said documents are maintained in the chambers file.

8

this time. If there are relevancy objections to be made or later privilege questions to be raised, Defendant has the opportunity to raise these issues closer to trial in pretrial motions. But at this juncture—discovery is broad.[19]

Not only does is *Gottlieb* more persuasive, but for policy reasons, the Court finds it appropriate for Plaintiff to obtain the documents in which he participated in the communications. The Court is tasked with narrowly construing an assertion of privilege.[20] And the policy underlying the attorney-client privilege is not advanced by now denying Plaintiff access to communications in which he participated and could have seen upon request at the time they were generated.[21]

For the reason stated above, Plaintiff's objections are sustained, and Defendant is **ORDERED** to produce to Plaintiff copies of the documents referenced in the privilege log to which he was party to the communications by **December 6, 2019**. The Court does caution Plaintiff—although Plaintiff is entitled to *review* the documents, this does not mean the communications may be disclosed—it only means McRae is able to receive them. The Court does note that a Protective Order is in place in this matter, and the parties should work together to ensure the privileged documents are protected.

---

[19] *See Parker v. Delmar Gardens of Lenexa, Inc.*, No. 16-2169-JWL-GEB, 2017 WL 1650757, at *3 (D. Kan. May 2, 2017) ("Relevance, at discovery, is broad, and does not mean the information obtained would necessarily be admitted at trial.").

[20] *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 2192885, at *8 (D. Kan. July 25, 2007) (noting "the general rule concerning privileges, where a court is to apply the privilege narrowly") (quoting *Qwest Commc'ns Int'l Inc.,* 450 F.3d at 1185 ("[P]rivileges 'must be strictly construed and accepted only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'")).

[21] *Gottlieb*, 143 F.R.D. at 247.

### 3. Items Marked "Accountant-Client" Privileged

Multiple documents are noted in Defendant's privilege log as withheld based on accountant-client privilege. Although there is no such privilege in Kansas, this is a diversity action and the parties agree Arizona state law applies to a determination of privilege.[22] Plaintiff cites *State v. O'Brien*[23] and *Brown v. Superior Court*[24] to argue the privilege does not attach to the withheld documents.

Defendant submitted a brief on this topic. In the brief, Defendant does not dispute that Arizona law allows for an accountant-client privilege, but contends the parties conferred about the disputed documents, and only two disputes remained: documents numbered 480 and 481 on the privilege log. However, according to the privilege log, those numbered documents were prepared by Dr. Leonard and sent to his attorney, Ian Quinn, regarding threatened or pending litigation. These documents appear to be attorney-client privileged, regardless of the accountant-client issue.

During the November 20 conference, the Court inquired regarding these two documents, and the parties acknowledged the two referenced documents were, in fact, attorney-client privileged. Other documents were discussed at hearing, and the Court ordered Defendant to produce the document numbered 16 on the privilege log, to which

---

[22] "Rule 501 of the Federal Rules of Evidence provides that state law supplies the rule of decision on privilege in diversity cases." *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998). The parties agree Arizona law controls this dispute.
[23] *State v. O'Brien*, 123 Ariz. 578, 601 P.2d 341 (Ct. App. 1979).
[24] *Brown v. Superior Court In & For Maricopa Cty.*, 137 Ariz. 327, 670 P.2d 725 (1983).

Defendant agreed. Plaintiff read into the record a number of other documents not previously addressed, which it contends Defendant failed to produce.

Given the lack of prior conference on the parties' part, the Court **ORDERED** counsel to continue to confer regarding full production of those documents not properly withheld on the basis of accountant-client privilege. The parties are required to govern their discussions under *Brown v. Superior Court*,[25] which finds "the privilege applies to communications between accountant and client *when those communications pertain to the client's financial affairs*; it does not apply to communications received by the client from an accountant employed as an expert to examine the affairs of a non-client."[26]

### 4. Emails Which Include Dr. Leonard's Wife

Plaintiff also objected to a number of privilege log entries because the emails' recipients include an email address which Dr. Leonard confirmed belongs to his wife.[27] Plaintiff references log entries numbered 34, 35, 45, 53, and 64. Plaintiff contends these communications are not privileged because they were disclosed to his wife, a third party. He argues the communications are not covered by marital privilege and must be produced.

Defendant asserts some of the documents referenced by Plaintiff are communications to and from legal counsel regarding another lawsuit where Dr. Leonard's wife was also named as a defendant. It maintains these communications are

---

[25] 137 Ariz. 327 (1983).
[26] *Id*. at 338.
[27] The log entries at issue contain the following email address: nada8us@yahoo.com.

attorney-client privileged communications, because Mrs. Leonard was a party to the lawsuit and represented by the same legal counsel.

Plaintiff cites the Arizona case of *Ulibarri v. Superior Court*[28] to support his argument. In *Ulibarri*, the court distinguishes between the marital communications privilege and the attorney-client privilege, noting the "marital communications privilege is not 'more important' than the attorney-client privilege; it is conceptually different".[29] "The attorney-client privilege protects communications 'for the purpose of fostering the effectiveness of the professional services.'"[30] But the "marital privilege protects any confidential communications made by one spouse to another in reliance on the marital relationship."[31]

The marital privilege does not apply to emails which simply include Dr. Leonard's wife in a group of other participants, because the communications are not confidential. If any were an email only between Dr. Leonard and his wife, the marital privilege may apply, but those are not the facts before the Court.

The question here is whether Defendant waived the attorney-client privilege because its communications were disclosed to a third party, Ms. Leonard. The court in

---

[28] *Ulibarri v. Superior Court in & for Cty. of Coconino*, 184 Ariz. 382, 386 (Ct. App. 1995), *corrected* (Aug. 22, 1995).
[29] *Id*.
[30] *Id*. at 387.
[31] *Id*.

12

*Ulibarri* outlines third-party waiver by explaining, "A client waives the privilege by disclosing confidential communications to a third party."[32]

The Court reserved ruling during the conference. Upon further consideration, the Court **ORDERS** the parties to confer about the emails under the following parameters:

- If the withheld emails include Plaintiff as a party to the communications, the emails must be disclosed under the parameters discussed in Section 2 above.

- If the withheld emails do *not* include Plaintiff, but *do* include Dr. Leonard's wife *and* are related to litigation *in which she was a named party* (regardless of whether she was eventually dismissed from the litigation), the emails are properly withheld as attorney-client privilege communications.

- If the emails do *not* include Plaintiff, *do* include Dr. Leonard's wife and are *not* related to the litigation in which she was a named party, the emails should be produced as disclosed to a third party, thereby waiving any privilege.

The conference ordered above should be completed in short order, such that any production may occur on or before **December 6, 2019**.

    5.    **<u>Overarching Waiver</u>**

Plaintiff's final objection to Defendant's privilege log is all-encompassing. Plaintiff asks that all privileges be waived regarding documents included on the log due to Defendant's delay in producing discovery and producing the final privilege log.

---

[32] *Id.* at 385.

Plaintiff cites three District of Kansas cases to contend other courts have found waiver in cases where a party either delayed in producing a privilege log or failed to produce one.[33]

Defendant contends complete waiver is a Draconian sanction, and one it was unprepared to address until confronted at the November 19-21 hearings. It maintains it was working as quickly as possible, given the technological difficulties which arose in the process of production, and the unexpected number of emails located and eventually produced.

It is true that a delay or failure in producing discovery or a privilege log may result in waiver of the attorney-client privilege.[34] Although this result is not automatic, and not required by the federal rules, the Advisory Committee notes to the Federal Rules do contemplate such a sanction.[35] But, courts have reserved such a penalty for only those cases where the offending party committed unjustified delay in responding to discovery.[36] "Minor procedural violations, good faith attempts at compliance and other such mitigating circumstances bear against finding waiver."[37]

---

[33] Plaintiff cites *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250 (D. Kan. 2008); *New Jersey v. Sprint Corp.*, 258 F.R.D. 421 (D. Kan. 2009); and *Violetta v. Steven Bros. Sports Mgmt., LLC*, No. 16-1193-JTM-GEB, 2017 WL 3675090 (D. Kan. Aug. 24, 2017) in support of his argument.

[34] *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1266 (D. Kan. 2008) (citing *Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.,* No. 05–2433–JWL–DJW, 2007 WL 1347754, at *2 (D. Kan. May 8, 2007) (citing 8 Charles A. Wright, Federal Practice and Procedure § 2016. 1, at 228–29 (2d ed.1994)).

[35] *Id*. (citing Fed. R. Civ. P. 26(b)(5) advisory committee's notes (1993 amendments)).

[36] *Id*. (citing *Sprint Commc'ns,* 2007 WL 1347754, at *2; *Heavin v. Owens–Corning Fiberglass,* No. 02–2572–KHV–DJW, 2004 WL 316072, at *2 (D. Kan. Feb. 3, 2004).

[37] *Id*. (citing *Sprint Commc'ns,* 2007 WL 1347754, at *2 (citing *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.,* 902 F. Supp. 1356, 1361–63 (D. Kan. 1995), *rev'd on other grounds,* 101 F.3d 645 (10th Cir.1996)).

There is no doubt there has been delay in this case, and Defendant could have been more forthcoming about both the existence of Dr. Leonard's laptop and Gmail account. However, the Court does not find the delay to be completely unjustified. Despite Defendant's efforts, many of the delays were related to the technological issues with both the laptop production and the email account production, which are mitigating circumstances weighing against complete waiver. Given these circumstances, the Court finds complete waiver too harsh a sanction.

Because the issue of complete waiver arose for the first time during the conference, on the parties' request, the Court will permit the parties to brief this issue. If Plaintiff chooses to seek complete waiver or other sanctions, including attorney fees and expenses directly attributed to the delay in production, Plaintiff must file a motion no later than **December 4, 2019**, citing authority for each sanction requested. Defendant shall have until **December 18, 2019** to respond. Given the depth of discussion at the conferences, no replies will be permitted.

Due to the delay and necessity of multiple conferences to accomplish full production, and Defendant's arrival to the Court on November 19—despite clear instructions—with *none* of the Gmail account produced, this Court does intend to award Plaintiff his fees following further briefing. In addition to this sanction, during the November 19 conference, the Court ordered Defendant to permit it access to the .PST

file[38] containing the raw Gmail production. The Court provided to Ed Robinson, counsel for Plaintiff, a copy of the .PST file so he could begin reviewing the information in the files, rather than waiting for Defendant to complete final production of the Bates-numbered emails and privilege log. Mr. Robinson was specifically directed to review the information for "attorney's eyes only" and not to share the information with his client. Mr. Robinson's review of the raw data does not waive any privilege Defendant may later assert to the information. This is not intended to preclude any later assertion of privileges by Defendant, but is intended as a sanction for Defendant's noncompliance to produce the materials prior to this week's hearing and a practical solution to keep this case progressing forward. Mr. Robinson is **ORDERED** to return the drive containing the .PST files to the chambers of the undersigned once he is permitted access to the final production of the Gmail account.

## III. Conclusion

Upon conclusion of the November 21 conference, the parties were ordered to continue to work toward full production of the Gmail account, and confer regarding those issues on the laptop privilege log addressed above. Additionally, the parties are to submit

---

[38] The .PST file is a storage folder of information extracted from Dr. Leonard's Gmail account by Loehrs, a digital forensics firm, and then transferred by Defendant to a second expert, D4, a technology and eDiscovery firm. The .PST files are—in that format—not organized, not reviewed for optical character recognition (OCR), Bates-numbered or culled for privilege. D4 was expected to complete the eDiscovery organization process; however, through either Defendant's lack of urgency, or technological issues between Loehrs and D4, or likely both—D4's processing of the file was taking much longer than anticipated.

a status report by email to ksd_Birzer_chambers@ksd.uscourts.gov no later than **November 27, 2019**.

**IT IS THEREFORE ORDERED** that the parties are to confer regarding the production discussed under the parameters outlined herein. The parties must submit an email status report by **12:00 noon on November 27, 2019**. Any sanctions-related motion is to be filed by **December 4, 2019**. Certain production discussed herein must be served by **December 6, 2019**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 26th day of November 2019.

                                           s/ Gwynne E. Birzer
                                           GWYNNE E. BIRZER
                                           United States Magistrate Judge